Daniel Cooper (Bar No. 153576)
  daniel@lawyersforcleanwater.com
Drevet Hunt (Bar No. 240487)
  drev@lawyersforcleanwater.com
LAWYERS FOR CLEAN WATER, INC.
1004-A O'Reilly Avenue
San Francisco, California 94129
Telephone: (415) 440-6520
Facsimile: (415) 440-4155

Michael Lozeau (Bar No. 142893)
  michael@lozeaudrury.com
Douglas Chermak (Bar No. 233382)
  doug@lozeaudrury.com
LOZEAU | DRURY LLP
1516 Oak Street, #216
Alameda, CA 94501
Telephone: (510) 749-9102
Facsimile: (510) 749-9103

*Attorneys for Plaintiff*
California Sportfishing Protection Alliance

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a non-profit corporation,<br><br>        Plaintiff,<br><br>   v.<br><br>CITY OF STOCKTON, a municipal corporation,<br><br>        Defendant. | Civil Case No.: CV 08-02184-LKK-KLM<br><br>**CONSENT DECREE** |

PDF created with pdfFactory trial version www.pdffactory.com

**CONSENT DECREE**

The following Consent Decree is entered into by and between Plaintiff California Sportfishing Protection Alliance ("Plaintiff" or "CSPA"), and defendant City of Stockton ("City" or "Defendant"). The entities entering into this Consent Decree are each referred to herein as "Settling Party" and collectively as "Settling Parties."

WHEREAS, CSPA is a non-profit public benefit corporation dedicated to the preservation, protection, and restoration of the environment, the wildlife and the natural resources of all waters of California, including the San Joaquin River and the Sacramento-San Joaquin River Delta;

WHEREAS, the City is a municipal corporation and is the permittee on the *Waste Discharge Requirements for City of Stockton Regional Wastewater Control Facility*, National Pollutant Discharge Elimination System ("NPDES") Permit No. CA0079138, Order No. R5-2008-0154 ("2008 Stockton WWTP Permit") and the previous NPDES permit *Waste Discharge Requirements for City of Stockton Regional Wastewater Control Facility*, National Pollutant Discharge Elimination System ("NPDES") Permit No. CA0079138, Order No. R5-2002-0083 ("2002 Stockton WWTP Permit");

WHEREAS, the City is a permittee on the *Waste Discharge Requirements for City of Stockton and County of San Joaquin Storm Water Discharges from Municipal Separate Storm Sewer System, San Joaquin County*, National Pollutant Discharge Elimination System ("NPDES") Permit No. CAS083470, Order No. R5-2007-0173, California Regional Water Quality Control Board – Central Valley Region ("2007 Stockton Stormwater Permit") and the previous NPDES permit *Waste Discharge Requirements for City of Stockton and County of San Joaquin Storm Water Discharges from Municipal Separate Storm Sewer System, San Joaquin County*, National Pollutant Discharge Elimination System ("NPDES") Permit No. CAS083470, Order No. R5-2002-0181, California Regional Water Quality Control Board – Central Valley Region, as amended by Resolution No. R5-2003-0133 ("2002 Stockton Stormwater Permit");

WHEREAS, on July 1, 2008, CSPA provided the Defendant, the Administrator and the Regional Administrator for Region IX of the United States Environmental Protection Agency ("EPA"), the Executive Director of the California State Water Resources Control Board ("State Board"), and the Executive Officer of the California Regional Water Quality Control Board, Central

PDF created with pdfFactory trial version www.pdffactory.com

1    Valley Region ("Regional Board") with a Notice of Violation and Intent to File Suit ("Notice Letter")

2    under section 505(a) of the Federal Water Pollution Control Act ("Clean Water Act" or "CWA"),

3    33 U.S.C. § 1365(a).  The Notice Letter alleged that Defendant violated and continues to violate the

4    Clean Water Act for discharges of pollutants in violation of the 2002 Stockton WWTP Permit;

5         **WHEREAS**, on September 16, 2008, Plaintiff filed its complaint in the United States District

6    Court for the Eastern District of California ("District Court") against Defendant, Case

7    No. CV-08-2184-LKK-KJM (hereinafter "Complaint");

8         **WHEREAS**, on September 17, 2008, Plaintiff sent Defendant a letter notifying the Defendant

9    of Plaintiff's intent to seek a peremptory writ of mandate ordering the Defendant to comply with the

10    Clean Water Act, the Porter-Cologne Water Quality Control Act ("Porter-Cologne"), the Statewide

11    Waste Discharge Requirements for Sanitary Sewer Systems - State Water Resources Control Board

12    Order No. 2006-0003 ("SSO WDR"), the 2002 Stockton WWTP Permit, the San Joaquin County

13    Ordinance and City of Stockton Municipal Code;

14         **WHEREAS**, on October 13, 2008, CSPA provided the Defendant, the EPA, the State Board,

15    and the Regional Board with a Supplemental Notice of Violation and Intent to File Suit

16    ("Supplemental Notice Letter") under section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a).

17    The Supplemental Notice Letter alleged that Defendant violated and continues to violate the Clean

18    Water Act for discharges of pollutants in violation of the 2002 Stockton WWTP Permit;

19         **WHEREAS**, on October 30, 2008, Plaintiff filed its first amended complaint in this case

20    (Case No. CV-08-2184-LKK-KJM) (hereinafter "First Amended Complaint");

21         **WHEREAS**, Defendant denies CSPA's allegations that it has violated the Clean Water Act

22    and/or any of the permits as alleged in the First Amended Complaint, denies that it failed to perform

23    its duties under the Clean Water Act, Porter-Cologne, the SSO WDR, the San Joaquin County

24    Ordinance, or the Stockton Municipal Code as alleged in the First Amended Complaint, and denies it

25    has liability to CSPA or other citizen groups;

26         **WHEREAS**, the Parties, through their authorized representatives and without either

27    adjudication of the First Amended Complaint's claims or admission by Defendant of any alleged

28    violation or other wrongdoing, have chosen to resolve this action through settlement and avoid the

PDF created with pdfFactory trial version www.pdffactory.com

1    costs and uncertainties of further litigation;

2         **NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of

3    which is hereby acknowledged, the Parties each hereby agree as follows:

4                                    **I.      GENERAL OBJECTIVES**

5         1.      The objectives of this Consent Decree are:

6              a.      To ensure that Defendant uses, implements, and improves ways, means, and

7    methods to prevent sanitary sewer overflows;

8              b.      To ensure that the City uses, implements, and improves ways, means, and

9    methods to prevent violations of, or comply with, applicable permits, laws, and regulations as related

10   to sanitary sewer overflows.

11                                   **II.     DEFINITIONS**

12        2.      Unless otherwise expressly defined herein, terms used in this Consent Decree, which

13   are defined in the CWA, Porter-Cologne, or in regulations implementing these statutes, have the

14   meaning assigned to them in the applicable statutes, regulations, or rules.  Whenever terms listed

15   below are used in this Consent Decree, the following definitions apply:

16             a.      "2002 Stockton WWTP Permit" means *Waste Discharge Requirements for*

17   *City of Stockton Regional Wastewater Control Facility*, National Pollutant Discharge Elimination

18   System ("NPDES") Permit No. CA0079138, Order No. R5-2002-0083, California Regional Water

19   Quality Control Board – Central Valley Region.

20             b.      "2008 Stockton WWTP Permit" means *Waste Discharge Requirements for*

21   *City of Stockton Regional Wastewater Control Facility*, National Pollutant Discharge Elimination

22   System ("NPDES") Permit No. CA0079138, Order No. R5-2008-0154, California Regional Water

23   Quality Control Board – Central Valley Region.

24             c.      "2002 Stockton Stormwater Permit" means *Waste Discharge Requirements for*

25   *City of Stockton and County of San Joaquin Storm Water Discharges from Municipal Separate Storm*

26   *Sewer System, San Joaquin County*, National Pollutant Discharge Elimination System ("NPDES")

27   Permit No. CAS083470, Order No. R5-2002-0181, California Regional Water Quality Control Board

28   – Central Valley Region, as amended by Resolution No. R5-2003-0133.

PDF created with pdfFactory trial version www.pdffactory.com

d.      "2007 Stockton Stormwater Permit" means *Waste Discharge Requirements for City of Stockton and County of San Joaquin Storm Water Discharges from Municipal Separate Storm Sewer System, San Joaquin County*, National Pollutant Discharge Elimination System ("NPDES") Permit No. CAS083470, Order No. R5-2007-0173, California Regional Water Quality Control Board – Central Valley Region.

e.      "CCTV" means closed-circuit television.

f.      "City" means the City of Stockton located in San Joaquin County, California.

g.      "Condition Assessment Inspection" means an inspection of a sewer reach by CCTV that results in documentation of a Condition Assessment Rating for the inspected sewer reach. "Condition Assessment Inspection" does not include CCTV inspection for cleaning quality assurance/quality control, spill follow-up, FOG source investigations, or other types of CCTV inspection unless those inspections yield a Condition Assessment Rating for the entire sewer reach.

h.      "Condition Assessment Rating" means an assignment of the condition given based on the Pipeline Assessment and Certification Program Standard ("PACP").

i.      "CSPA" means California Sportfishing Protection Alliance.

j.      "day" means a calendar day.  In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, Federal or State or City Holiday, or City Furlough Day, the period runs until the close of business on the next day that is not a Saturday, Sunday, Federal or State or City Holiday, or City Furlough Day.  In no event shall the number of City Furlough Days used for computing time periods as defined here exceed 14 days in a calendar year.

k.      "Easement Sewers" means sanitary sewers upon, over, across, or through land not owned by the City but which the City owns an easement upon, over, across, and/or through for the purpose of maintaining and providing sanitary sewer services, including for the purpose of installing or maintaining sanitary sewer infrastructure.

l.      "FOG" means fats, oil, and grease.

m.      "FSE" means Food Service Establishment, any facility where food is served and intended for individual portion service, and includes the site at which individual portions are

PDF created with pdfFactory trial version www.pdffactory.com

1  provided.

2        n.     "Grease interceptor" is as defined in the Stockton Municipal Code and

3  Stockton Standard Plans and Specifications.

4        o.     "Lower Lateral Spill" or "Lower Lateral SSO" means an unintentional

5  discharge, release, or spill of sewage caused by a blockage or other problem in a Lower Lateral

6  owned by the City of Stockton, and has the same meaning as those terms defined in Section A.1. of

7  the Statewide General Waste Discharge Requirements for Sanitary Sewer Systems, State Water

8  Resources Control Board Order No. 2006-0003, or any amendment thereto, and which currently

9  means: "any overflow, spill, release, discharge or diversion of untreated or partially treated

10  wastewater from a sanitary sewer system.

11        p.     "Lower Lateral" means the lateral line owned by the City connecting a home

12  or other structure to the City's sewer main extending from the sewer main to the back of the public

13  right-of-way or City clean out, whichever is applicable to the lateral connection.  Lower Laterals are

14  generally connected to Private Laterals.

15        q.     "NPDES" means National Pollutant Discharge Elimination System.

16        r.     "Private Lateral" means the private sanitary sewer lateral or line connecting a

17  home or other structure to the Lower Lateral, generally extending from the outside of the foundation

18  of the structure to the public right-of-way or the City's cleanout, whichever is applicable.

19        s.     "Sanitary Sewer Overflow" or "SSO" has the same meaning as those terms are

20  defined in Section A.1. of the SSO WDR, or any amendment thereto, and which currently means:

21  "any overflow, spill, release, discharge or diversion of untreated or partially treated wastewater from

22  the Stockton Collection System.  SSOs include:  (i) Overflows or releases of untreated or partially

23  treated wastewater that reach waters of the United States; (ii) Overflows or releases of untreated or

24  partially treated wastewater that do not reach waters of the United States; and (iii) Wastewater

25  backups into buildings and on private property that are caused by blockages or flow conditions within

26  the publicly owned portion of a sanitary sewer system."  For purposes of this definition, "waters of

27  the United States" has the meaning as set forth in 40 C.F.R. § 122.2.

28        t.     "Sanitary Sewer Overflow Emergency Response Plan" shall mean the current

PDF created with pdfFactory trial version www.pdffactory.com

version of the City's Sanitary Sewer Overflow Emergency Response Plan as of the Effective Date, as submitted to the State Board pursuant to the SSO WDR.

u.    "sewer segment" means any section of publicly owned sewer line or pipe located between: (1) two manholes/maintenance holes; (2) a pump station and a manhole/maintenance hole; (3) a pump station or a manhole/maintenance hole and a headworks structure; or (4) a sewer line or pipe otherwise identifiable as a discrete section.

v.    "SSMP" means the Sewer System Management Program developed and implemented by Stockton for the Stockton Collection System in accordance with the SSO WDR. The goal of an SSMP is to provide a plan and schedule to properly manage, operate, and maintain all parts of the sanitary sewer system.  This will help reduce and prevent SSOs, as well as mitigate any SSOs that do occur.  The bulk of Stockton's SSMP includes collection system condition monitoring; collection system operations, maintenance and repair; a FOG program; legal authority; and an SSO response plan.  Sections of Stockton's SSMP are still being developed.

w.    "SSO WDR" means Statewide General Waste Discharge Requirements for Sanitary Sewer Systems, State Water Resources Control Board Order No. 2006-0003, as amended by Order No. WQ 2008-0002-EXEC.

x.    "Stockton Collection System" means the sewer pipes and lines, manholes or maintenance holes, pump stations, and all appurtenances thereto under ownership of the City of Stockton that are used to convey wastewater generated by residential, commercial, and industrial sources to the Stockton WWTP.  For purposes of this Consent Decree, the Stockton Collection System does not include private laterals or other privately owned or operated infrastructure that connects to the Stockton Collection System.

y.    "Stockton WWTP" means the wastewater treatment facility and all equipment, storage, and other infrastructure used by Stockton to treat sanitary sewage located downstream of the headworks to such facility until its point of discharge.

z.    "Upper Lateral" means the private sanitary sewer lateral or line connecting a home or other structure to the Lower Lateral, generally extending from the outside of the foundation of the structure to the public right-of-way or the City's cleanout, whichever is applicable.

PDF created with pdfFactory trial version www.pdffactory.com

aa.    "year" shall mean a calendar year, unless otherwise specified.

### III.    JURISDICTION AND VENUE

3.    Plaintiff alleges that: a) this District Court has jurisdiction over the subject matter of the claims asserted by Plaintiff pursuant to section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1), 28 U.S.C. §§ 1331 and 2201 (an action for declaratory and injunctive relief arising under the Constitution and laws of the United States), and 28 U.S.C. § 1367(a), which provides supplemental jurisdiction for claims based on state law, including, but not limited to, California Code of Civil Procedure § 1085, the California Water Code §§ 13000 *et seq.* (the "Porter-Cologne Water Quality Control Act" or "Porter-Cologne"), San Joaquin County Ordinance, Title 5, and the City of Stockton Municipal Code, Chapter 7; b) venue is proper in this judicial district pursuant to sections 309(b) and 505(c) of the Clean Water Act, 33 U.S.C. §§ 1319(b), 1365(c), and 28 U.S.C. §§ 1391(b) and (c); and c) the First Amended Complaint filed herein states claims for which relief can be granted.  For purposes of settlement, the Settling Parties waive all objections that they may have to the Court's jurisdiction to enter and retain jurisdiction over this Consent Decree.

### IV.    EFFECT OF CONSENT DECREE

4.    Plaintiff does not, by their consent to this Consent Decree, warrant or aver in any manner that the Defendant's compliance with this Agreement will constitute or result in compliance with any Federal or State law or regulation.  Nothing in this Agreement shall be construed to affect or limit in any way the obligation of the Defendant to comply with all applicable Federal, State and local laws and regulations governing any activity required by this Consent Decree.

5.    Nothing in the Consent Decree shall be construed as an admission by Defendant, and does not intend to imply any admission as to any fact, finding, issue of law, or violation of law, nor shall compliance with this Consent Decree be construed as an admission by Defendant of any fact, finding, conclusion, issue of law, or violation of law.

### V.    APPLICABILITY

6.    The provisions of this Consent Decree apply to and bind the Settling Parties, including any successors or assigns.  The Settling Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Settling Parties, and to

PDF created with pdfFactory trial version www.pdffactory.com

legally bind the Settling Parties to its terms.

7.      The Settling Parties agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.  By entering into this Consent Decree, the Defendant does not admit liability for any purpose as to any allegation or matter arising out of the Notice Letter, Supplemental Notice Letter and/or First Amended Complaint.

8.      No change in ownership or corporate or other legal status of the Defendant or any transfer of the Defendant's assets or liabilities shall in any way alter the responsibilities of the Defendant or any of its successors or assigns thereof, under this Consent Decree.  In any action to enforce this Consent Decree, the Defendant shall not raise as a defense the failure by any of its agents, servants, contractors, employees, and successors or assigns to take actions necessary to comply with this Consent Decree.

## VI.      EFFECTIVE DATE AND TERMINATION DATE

9.      The term "Effective Date," as used in this Consent Decree, shall mean the last date for the United States Department of Justice to comment on the [proposed] Consent Decree, i.e., the 45th day following the United States Department of Justice's receipt of the [proposed] Consent Decree and Stipulated Dismissal.

10.     This Consent Decree will terminate five (5) years from the Effective Date if the City meets its SSO Reduction Performance Standard for the year 2013 (as set forth in Section VII below). Failure to comply with the SSO Reduction Performance Standard in 2013 will result in year to year extensions of the Consent Decree until the City achieves an SSO rate of no more than five (5) SSOs per 100 miles of sewer in a year, in accordance with Section VII below.  If either Settling Party has invoked the dispute resolution process pursuant to Section XVIII and the dispute has not been resolved at the time the Consent Decree would otherwise terminate, the Consent Decree shall continue in effect until the dispute is resolved, either through mutual agreement of the Settling Parties or by the Court.

## VII.      SSO AND SPILL REDUCTION PERFORMANCE STANDARDS

11.     <u>SSO Reduction</u>.  It is the goal of this Consent Decree to reduce Stockton Collection System SSOs, which are comprised of spills from both sewer mains and Lower Laterals.  The City

PDF created with pdfFactory trial version www.pdffactory.com

shall reduce its SSOs from sewer mains and Lower Laterals as provided in Table 1 and subsections of this paragraph, which set forth the SSO Reduction Performance Standards that the City must meet.

| Calendar Year | Maximum Number of SSOs Per 100 Miles of Sewer /Year[1] |
|---|---|
| 2009 | 24 |
| 2010 | 20 |
| 2011 | 15 |
| 2012 | 10 |
| 2013 | 5 |

Table 1 – SSO Reduction Performance Standards

a.      For purposes of establishing the SSO Reduction Performance Standards, a SSO of 50 gallons or less caused by a blockage or defect in a Lower Lateral and not reaching a surface water body will not be counted.

b.      For purposes of establishing the SSO Reduction Performance Standards, the miles of sewer lines excluding Lower Laterals as of the Effective Date equals 918.65 miles, and subsequently updated in the Annual Report required under Section XV of this Consent Decree.

c.      Compliance with SSO Reduction Performance Standards shall be determined using the miles of sewer excluding lower laterals reported by the City in each year's Annual Report required under Section XV of this Consent Decree.

d.      Compliance or non-compliance with the SSO Reduction Performance Standard shall be documented by the City in each year's Annual Report required under Section XV of this Consent Decree.

e.      Failure to meet the SSO Reduction Performance Standards shall be a violation of this Consent Decree and subject to the dispute resolution process set forth in Section XVIII.

f.      In order to assist in reaching the above SSO Reduction Performance Standards, the City shall implement the programs described hereafter.

## VIII.   SSO INVESTIGATION, RESPONSE AND REPORTING

12.      The terms, conditions, obligations, and requirements of the City's current Sanitary

---

[1] Miles of Sewer in this table means miles of main line sewers plus miles of force mains.

PDF created with pdfFactory trial version www.pdffactory.com

Sewer Overflow Emergency Response Plan are incorporated into this Consent Decree, and are enforceable pursuant to this Consent Decree.

13.     The City recognizes that proper identification of the cause of SSOs is essential to prevention of future SSOs.

14.     Within ninety (90) days of the effective date of this Consent Decree the City shall prepare and implement a standard operating procedure ("SSO Cause Determination SOP") aimed at the proper and consistent determination of the cause of each SSO.  At a minimum, for main line blockages the City shall ensure that its responders open the maintenance hole downstream of where the cause of the blockage appears, insert a trap, and observe and report FOG, roots, or specific types of debris that appear to have been the cause of the SSO.  For Lower Lateral blockages, at a minimum the City shall ensure that responders identify any material retained on the cleaning tools used to clear the blockage.  The City shall provide a copy of the SSO Cause Determination SOP to CSPA for review and comment within seven (7) days of its finalization.  CSPA shall provide the City, in writing, with all recommended revisions to the SSO Cause Determination SOP within twenty-one (21) days of receipt of such SSO Cause Determination SOP.  The City shall consider each of CSPA's recommended revisions and indicate within forty-five (45) days of receipt whether the City accepts each such recommendation for revision.  If the City does not accept each of CSPA's recommendations, and remaining differences cannot be informally resolved promptly between the Settling Parties, then CSPA may seek dispute resolution pursuant to Section XVIII of this Consent Decree.  In any such dispute resolution process, the City shall demonstrate that the elements or actions set forth in the SSO Cause Determination SOP are designed to ensure causes of the SSOs can be readily and accurately determined.  To the extent the Settling Parties do not dispute specific original provisions of the SSO Cause Determination SOP or specific recommended revisions, the City shall implement all undisputed provisions or revisions.  After the Settling Parties have reached agreement on the SSO Cause Determination SOP or after the dispute resolution process resolves any dispute concerning the SSO Cause Determination SOP, the City shall begin implementation of the SSO Cause Determination SOP as an enforceable requirement of this Consent Decree within sixty (60) days of agreement or upon the schedule set forth therein.

PDF created with pdfFactory trial version www.pdffactory.com

15.     Within one hundred eighty (180) days upon reaching agreement with CSPA regarding the SSO Cause Determination SOP, the City shall complete training of all City personnel that respond to SSOs in the methods and practices used to identify the root causes of SSOs and shall certify to CSPA that the training has been completed.  All new employees who may respond to SSOs shall be trained in the methods and practices used to identify the root causes of SSO and the City shall maintain records of such training.

16.     The cause of the SSO shall be reported in the State Board's California Integrated Water Quality System ("CIWQS") and entered into and maintained in a City database.  The information in the database shall be used in evaluating the City's programs.  The City shall include in its Annual Report required under Section XV of this Consent Decree, a summary of SSO causes determined by analysis of its database.

17.     In the first two Annual Reports required by Section XV of this Consent Decree, the City shall provide to CSPA a compilation of individual SSO Reports for each spill it reported to the State Board.  The City may discontinue providing CSPA with compilations of individual spill reports after the first two Annual Reports required under Section XV of this Consent Decree, unless CSPA requests in writing that the City continue to provide such compilations.

18.     In the Annual Report required under Section XV of this Consent Decree, the City shall provide CSPA with a summary of any changes to the total quantity of sewer line that will affect the calculation of the SSO Reduction Performance Standards.

19.     The City shall include as part of its Sanitary Sewer Overflow Emergency Response Plan procedures that require the City to notify as soon as practicable the County of San Joaquin's Emergency Dispatch of any SSO occurring within the County of San Joaquin's jurisdictional area of the Stockton Urbanized Area MS4 ("County's MS4 Jurisdiction") from the Stockton Collection System if the SSO has discharged to, or threatens to discharge to, the County MS4.  The City's notification to the County in no event shall be longer than that required by the SSO WDR to notify the State Office of Emergency Services after learning of an SSO occurring from the Stockton Collection System that has discharged to, or threatens to discharge to the County's MS4.  The City's obligation to notify the County of San Joaquin shall in no way halt the City's emergency response

PDF created with pdfFactory trial version www.pdffactory.com

1  actions to capture and/or recover any SSO from the Stockton Collection System.  For any SSO from
2  the Stockton Collection System that discharges to, or threatens to discharge to the County's MS4, the
3  City shall take all feasible steps to prevent the SSO from reaching waters of the United States, and
4  will work cooperatively with the County to:

5        a.    control pump stations, as necessary;

6        b.    obtain access to the County's MS4, as necessary; and

7        c.    use reasonable best efforts to respond SSOs to the County's MS4 in a
8  cooperative manner.

9          **IX.    SSO REDUCTION ACTION PLAN**

10      20.    If any Annual Report required under Section XV of this Consent Decree, provided by
11  the City to CSPA documents compliance with the then-applicable SSO Reduction Performance
12  Standards, the City shall have no obligation to prepare a SSO Reduction Action Plan as set forth
13  herein.  However, if an Annual Report required under Section XV of this Consent Decree documents
14  SSOs in excess of the SSO Reduction Performance Standards set forth in this Consent Decree, the
15  City shall submit to CSPA by June 1st of that same year a SSO Reduction Action Plan.  An SSO
16  Reduction Action Plan prepared pursuant to this section shall specify the actions taken in the calendar
17  year for which the Annual Report was submitted, and shall specify additional measures to be taken
18  during the next calendar year and thereafter, which are designed to achieve compliance with the SSO
19  Reduction Performance Standards set forth in this Consent Decree.  The SSO Reduction Action Plan
20  shall include a proposed schedule for implementation of all actions proposed.

21      21.    CSPA shall provide the City, in writing, with all recommended revisions to the SSO
22  Reduction Action Plan within forty-five (45) days of receipt of such SSO Reduction Action Plan.
23  The City shall consider each of CSPA's recommended revisions and indicate within forty-five (45)
24  days of receipt whether the City accepts each such recommendation for revision.  If the City does not
25  accept each of CSPA's recommendations, and remaining differences cannot be informally resolved
26  promptly between the Settling Parties, then CSPA may seek dispute resolution pursuant to
27  Section XVIII of this Consent Decree.  In any such dispute resolution process, the City shall
28  demonstrate that the elements or actions set forth in the SSO Reduction Action Plan are designed to

PDF created with pdfFactory trial version www.pdffactory.com

achieve compliance with the SSO Reduction Performance Standards set forth in Section VII of this Consent Decree, and, taken as a whole, constitute good engineering and operational approaches to achieving compliance.  To the extent the Settling Parties do not dispute specific original provisions of the SSO Reduction Action Plan or specific recommended revisions, the City shall implement all undisputed provisions or revisions.  After the Settling Parties have reached agreement on the SSO Reduction Action Plan or after the dispute resolution process resolves any dispute concerning the SSO Reduction Action Plan, the City shall begin implementation of the SSO Reduction Action Plan as an enforceable requirement of this Consent Decree within sixty (60) days of agreement or upon the schedule set forth therein.

22.     The City shall address in the SSO Reduction Action Plan the various elements of such a plan that it believes will be necessary to achieve future compliance with the SSO Reduction Performance Standards.  The City may include any or all elements in the SSO Reduction Action Plan in its SSMP.

**X.     SEWER CONDITION ASSESSMENT/REHABILITATION/REPLACEMENT**

23.     Within one hundred twenty (120) days of the Effective Date of the Consent Decree, the City shall prepare a schedule for CCTV inspection and condition assessment of all gravity sewers in its collection system.  The City shall provide CSPA with its CCTV inspection schedule immediately upon setting it, and no later than one hundred twenty (120) days from the Effective Date of the Consent Decree.  In subsequent years, as part of its Annual Report required by Section XV of this Consent Decree, the City shall provide its schedule for CCTV inspection for the next year.

24.     The inspections in the schedule proposed in Paragraph 23 shall be prioritized in the following order:  First, inspect sanitary sewers with known or suspected structural deficiencies; second, inspect sanitary sewers that have experienced blockages; third, inspect sanitary sewers 15 inches and smaller in diameter greater than ten (10) years old; fourth, inspect sanitary sewers greater than 15 inches in diameter greater than ten (10) years old.

25.     Within five (5) years of the Effective Date of the Consent Decree, the City shall complete a one-time CCTV inspection and condition assessment of all gravity sewer line segments in the Stockton Collection System that are ten (10) years old or older.  In no event shall the City inspect

PDF created with pdfFactory trial version www.pdffactory.com

and assess less than eighty (80) miles of sewer each year until all required sewers are inspected as required by this paragraph.  Sewers inspected within the last five (5) years need not be re-inspected under this program.  In order to ensure the inspection of all required sewers, the City shall:

- inspect at least 8.7% (or 80 miles) of the required sewers within one year of the Effective Date;

- inspect at least 20% of the required sewers within two years of the Effective Date;

- inspect at least 40% of the required sewers within three years of the Effective Date;

- inspect at least 70% of the required sewers within four years of the Effective Date; and

- complete the inspection of 100% of the required sewers within five years of the Effective Date.

26.     The City will conduct a CCTV inspection of Lower Laterals under the following conditions:

a.      Within fifteen (15) days of any structural blockage causing an SSO (as evidenced by pipe material, roots or backfill material captured on the cleaning tools);

b.      Within thirty (30) days of any non-structural blockage causing an SSO;

c.      Within sixty (60) days of any blockage not causing an SSO but does not allow the passage of cleaning tools; or

d.      Within ninety (90) days of a second blockage (where no SSO has occurred) in any twelve (12) month period.

27.     Any sewer line or Lower Lateral where the passage of the CCTV camera was blocked by the condition of the pipe shall result in the segment being defined as failed.  That sewer line or Lower Lateral shall be repaired within 90 days and shall be re-inspected following the repair.

28.     Sewer segments that are currently less than ten (10) years old but which reach the age of ten (10) years during the life of this Consent Decree shall be inspected by CCTV and their condition shall be assessed within one (1) year of reaching ten (10) years old.

29.     Inspection under this section of the Consent Decree shall be accomplished using CCTV.  The sewer line defects will be coded using the Pipeline Assessment and Certification Program ("PACP") standard.  The work products will include an inspection database (which may be

PDF created with pdfFactory trial version www.pdffactory.com

included as part of a larger database), PACP Grade Score, prioritized repair projects, and prioritized rehabilitation/replacement projects.  The annual inspection quantity will include the sum of the lengths of all of the gravity sewers and Lower Laterals where inspection was completed.  The inspection work will be completed using the City's CCTV crew and/or contract CCTV service.

30.     The City is committed to correcting conditions that may cause an SSO within an appropriate timeframe.  The City's timeframes for actions to correct observed conditions are shown on Table 2 (Timeframe for Actions to Correct Observed Defects)[2].

| Observed Defect | Corrective Action | Time Frame (from date defect observed) | Other Action |
|---|---|---|---|
| PACP Grade 4 or 5 Maintenance Defect | Clean sewer or lower lateral | 30 days | Place on hot spot cleaning or treatment schedule as appropriate |
| PACP Grade 3 Maintenance Defect | Clean sewer or lower lateral | 4 months | Place on hot spot cleaning or treatment schedule as appropriate |
| PACP Grade 5 Structural Defect – Immediate Failure Likely | Repair or rehabilitate sewer or lower lateral | ASAP (no more than 90 days) | N/A |
| PACP Grade 5 Structural Defect – Immediate Failure Unlikely | Repair, rehabilitate, or re-inspect sewer or lower lateral | 2 years | Reinspect within one year if corrective action not taken |
| PACP Grade 4 Structural Defect | Repair, rehabilitate, or re-inspect sewer or lower lateral | 5 years | Reinspect within three years if corrective action not taken |

Table 2 – Timeframe for Actions to Correct Observed Defects

31.     In addition to actions required above, when an SSO occurs caused by a structural problem with a lower lateral (as evidenced by pipe material, roots or backfill material captured on the cleaning tools), the City shall, within fifteen (15) working days of the SSO, inspect the lower lateral with CCTV, assess its condition, and immediately repair defects that were the cause of the SSO.  For all other Lower Lateral SSOs, the City shall conduct a CCTV inspection within thirty (30) days.

32.     The Municipal Utilities Department for the City of Stockton  shall propose and

---

[2] Any action specified in Table 2 that would occur beyond the termination date of this Consent Decree as specified in paragraph 10 shall not be an enforceable action subject to the terms and conditions set forth herein.

PDF created with pdfFactory trial version www.pdffactory.com

recommend to the City Council the adoption of legislation that would require a homeowner to inspect the upper/private lateral and make all necessary repairs within one hundred twenty (120) days where the City has determined that an SSO was caused by roots or debris entering the lower lateral as a result of defects in the private lateral.

33. In the Annual Report required under Section XV of this Consent Decree, the City shall provide information regarding condition assessment, rehabilitation, and replacement. At a minimum the Annual Report must include: the miles of sewer and lower lateral that were assessed in the previous year; the miles of sewer assessed receiving each grade in the PACP grading system; and, a summary of the mileage of and identification of sewers and Lower Laterals repaired, rehabilitated and/or replaced during the previous year.

## XI.     FATS, OILS AND GREASE PROGRAM

34. The City shall continue to implement and improve its current FOG Control Program as described in Section IX of the City's SSMP consistent with the terms set forth below. Facilities permitted under the Federal Pretreatment Program will comply with the FOG Control Program requirements to the extent that they are incorporated into those facilities' permits.

35. Within one hundred twenty (120) days of the effective date of the Consent Decree, the Municipal Utilities Department for the City of Stockton shall propose and recommend to the City Council the adoption of proposed amendments to Municipal Code Section 7-089.19. Grease Interceptors to:

a. Require all new or substantially remodeled (greater than $75,000) food service establishments ("FSEs") to install a grease interceptor unless the FSE demonstrates that it does not have the potential to discharge FOG in amounts greater than permitted to enter the City's sanitary sewers.

b. Require all facilities operating a grease interceptor to maintain maintenance and cleaning records for a period of no less than three (3) years and to make such records available for public inspection at any time.

c. Add "schools" to the list of establishments already covered by that section of the Code.

PDF created with pdfFactory trial version www.pdffactory.com

36. <u>FOG Control Action Plan</u>:  Within one hundred eighty (180) days of the effective date of this Consent Decree, the City shall prepare and submit to CSPA for review and comment a FOG Control Action Plan applicable to all FSEs within the City's service area.  The FOG Control Action Plan, at a minimum, shall include the following:

a. Identification of all FSEs in the City's service area.

b. A schedule for, at least, annual inspections of all FSEs during which the inspector shall, at a minimum: evaluate Best Management Practices ("BMPs") designed to minimize the discharge of FOG; assess the condition of grease removal device(s); measure grease levels in grease interceptor(s); review grease removal records; and ensure that any deficiencies discovered in previous inspections have been remedied.

c. Follow up inspections at all FSEs with deficiencies within thirty (30) days of the original inspection.  Provision for a second follow-up inspection if the deficiency was not remedied by the time of the first re-inspection within fifteen (15) days of the initial re-inspection, and, continuing re-inspections on a schedule consistent with the City's compliance plan.

d. Provisions for inspections of all FSEs suspected of causing or contributing to an SSO within five (5) working days of the occurrence of the SSO.

e. Provisions for inspection of all new or substantially remodeled FSEs within ninety (90) days of the FSE start-up or remodel completion.

f. Distribution of outreach materials appropriate to FSEs informing FSE operators of BMPs applicable to their establishments within one hundred twenty (120) days of the adoption of the FOG Control Action Plan.

g. A mechanism for review and analysis of FOG inspection results.

h. An enforcement protocol to ensure compliance with FOG Control Action Plan requirements, including record keeping requirements.

i. Twice a year outreach aimed at both educating residents that FOG discharges cause SSOs and impose increased costs on the ratepayers, and providing residents with BMPs for residential grease control.

j. A staffing plan and budgeted resources to support the implementation of the

PDF created with pdfFactory trial version www.pdffactory.com

1    FOG Control Action Plan.

2            k.      A schedule for implementation of the FOG Control Action Plan.

3        37.     CSPA shall provide the City, in writing, with all recommended revisions to the FOG

4    Control Action Plan within forty-five (45) days of receipt of the FOG Control Action Plan.  The City

5    shall consider each of CSPA's recommended revisions and indicate within forty-five (45) days of

6    receipt whether the City accepts each such recommendation for revision.  If the City does not accept

7    each of CSPA's recommendations, and remaining differences cannot be informally resolved

8    promptly between the Settling Parties, then CSPA may seek dispute resolution pursuant to

9    Section XVIII of this Consent Decree.  In such dispute resolution process, the City shall demonstrate

10   that the elements or actions set forth in the FOG Control Action Plan are designed to achieve

11   compliance with the SSO Reduction Performance Standards set forth in Section VII of this Consent

12   Decree.  To the extent the Settling Parties do not dispute specific original provisions or recommended

13   revisions, the City shall implement all undisputed provisions or revisions.  After the Settling Parties

14   have reached agreement on the FOG Control Action Plan or after dispute resolution pursuant to

15   Section XVIII of this Consent Decree resolves any dispute concerning the FOG Control Action Plan,

16   the City shall begin implementation of the FOG Control Action Plan as an enforceable requirement of

17   this Consent Decree within sixty (60) days of agreement or upon the schedule set forth therein.

18       38.     In the Annual Report required under Section XV of this Consent Decree the City shall

19   document the activities carried out under the FOG Control Action Plan during the previous year.  The

20   report shall at a minimum:  summarize activities under the FOG Control Action Plan; document

21   inspections, re-inspections, and results of inspections; provide an enforcement log for the previous

22   year, which summarizes enforcement actions; summarize FOG outreach efforts; present the City's

23   analysis of the effectiveness of the previous year's FOG Control Action Plan; include any changes to

24   the FOG Control Action Plan to be implemented in the subsequent year; and discuss budget and

25   staffing levels for the previous and current years.

26           **XII.    SEWER CLEANING, HOT SPOTS, AND LATERAL PROGRAMS**

27       39.     <u>Routine Cleaning</u>.  The City shall clean all of its gravity sanitary sewer reaches, fifteen

28   (15) inches in diameter or smaller in the Stockton Collection System at least once within five (5)

PDF created with pdfFactory trial version www.pdffactory.com

1  years of the Effective Date of this Consent Decree.  Lower Laterals shall be cleaned as needed.

2      40.    Hot Spot Cleaning Program. The City shall improve its hot spot (preventive

3  maintenance) cleaning program.  The City shall continue to implement its hot spot cleaning program

4  as set forth in Attachment A.  Within sixty (60) days of the effective date of the Consent Decree, the

5  City shall implement and use the cleaning and evaluation methodology set forth below in Figure 1

6  ("Preventive Maintenance Scheduling Flow Chart").



Figure 1 - Preventive Maintenance Scheduling Flow Chart

PDF created with pdfFactory trial version www.pdffactory.com

41.   The City shall collect all observations made by its sewer cleaning crews in accordance with the SSO Cause Determination SOP regarding the extent and nature of materials removed during the cleaning process.  The observations shall be recorded in the City's database.  The City shall maintain or change the frequency of its hot spot cleaning for a sewer line segment based on the Sewer Cleaning Results Matrix set forth in Table 3 below in accordance with the section labeled Action.

| | Clear | Light | Moderate | Heavy |
|---|---|---|---|---|
| **Debris** | Code: **CL**<br>No observable debris | Code: **DL**<br>Minor amount of debris<br>15 minutes or less to clean<br>1 pass | Code: **DM**<br>Less than 5 gallons of debris per line segment<br>15-30 minutes to clean<br>2-3 passes | Code: **DH**<br>More than 5 gallons of debris per line segment<br>More than 30 minutes to clean<br>More than 4 passes<br>Operator concern for future stoppage |
| **Grease** | Code: **CL**<br>No observable grease | Code: **GL**<br>Minor amounts of grease<br>15 minutes or less to clean<br>1 pass | Code: **GM**<br>Small "chunks"<br>No "logs"<br>15-30 minutes to clean<br>2-3 passes | Code: **GH**<br>Big "chunks" or "logs"<br>More than 30 minutes to clean<br>More than 4 passes<br>Operator concern for future stoppage |
| **Roots** | Code: **CL**<br>No observable roots | Code: **RL**<br>Minor amounts of roots<br>15 minutes or less to clean<br>1 pass | Code: **RM**<br>Thin stringy roots<br>No "clumps"<br>15-30 minutes to clean<br>2-3 passes | Code: **RH**<br>Thick roots<br>Large "clumps"<br>More than 30 minutes to clean<br>More than 4 passes<br>Operator concern for future stoppage |
| **Debris:** Structural pipe fragments soil, rock, etc. | Code: **CL**<br>No observable materials | Code: **SL**<br>Specify material (if possible)<br>Minor amounts of material | Code: **SM**<br>Specify material<br>Less than 5 gallons of material per line segment | Code: **SH**<br>Specify material<br>More than 5 gallons of material per line segment<br>Operator concern for future stoppage |
| **Action** | Decrease frequency to next lower frequency after 3 consecutive CL results (e.g. 6 months to 12 months) | Continue current maintenance frequency | Increase current maintenance frequency to next higher frequency (e.g. 6 months to 3 months) | Increase current maintenance frequency to next higher frequency (e.g. 6 months to 3 months) |

Note:  Time frames for cleaning and quantities of materials removed are based on a 15-inch, 500-foot long segment.

Table 3 - Sewer Cleaning Results Matrix

42.     Changes in cleaning frequency based upon cleaning results shall be as follows: no reduction in cleaning frequency shall be made in a sewer line segment with a previous history of SSOs without the approval of an appropriate collection system maintenance supervisor; three (3) consecutive results of "clear" will result in the cleaning frequency being reduced to the next lower cleaning frequency, and; results of "medium" or "heavy" will result in the cleaning frequency being increased to the next highest frequency.

43.     Sewer Cleaning Quality Assurance/Quality Control Program:  The City shall institute and maintain a quality assurance/quality control ("QA/QC") program adequate to ensure proper and complete cleaning of sewers.  The quality assurance/quality control program shall consist of spot checking the cleaning quality in a minimum of two percent by sewer segment of the cleaned sewers on a monthly basis using CCTV to ensure adequate cleaning.  If the cleaning is found to be inadequate, the sewer segment will be re-cleaned within thirty (30) days.  If more than ten (10) percent of the spot checked segments require re-cleaning in any given month, spot checking of the system shall be increased to five (5) percent.  Where spot checking of the system has increased to five (5) percent pursuant to this section, such spot checking will not be reduced to two (2) percent until three consecutive months show two (2) percent or less of the pipes inspected required re-cleaning.  If a required inspection frequency increase is identified with a crew leader, the increased inspection schedule will only apply to that crew leader and his/her crew.

44.     If scheduled or hot spot cleaning of a segment or area cannot be properly accomplished due to pipe condition or access limitations, the condition of the segment shall be considered failing and shall be repaired within one hundred twenty (120) days.

45.     The City shall identify the sewer lines cleaned and the results of its QA/QC program each year in the Annual Report required by Section XVIII of this Consent Decree.

## XIII.   PRIVATE LATERALS

46.     Within 180 days of this Consent Decree, the Municipal Utilities Department for the City of Stockton shall propose and recommend to the City Council the adoption of amendments to the Municipal Code to:

a.      Require inspection of private laterals as a condition to sale of a property,

PDF created with pdfFactory trial version www.pdffactory.com

b.       Require inspection of private laterals as a condition to obtaining a building permit if the value of the construction for non-residential structures either exceeds $150,000, or exceeds $75,000 and involves one or more plumbing fixtures connected to the City's sewer system;

c.       Require inspection of private laterals as a condition to obtaining a building permit if the value of construction for residential structures either exceeds $50,000, or exceeds $25,000 and involves one or more plumbing fixtures connected to the City's sewer system; and,

d.       Set standards for evaluating the condition of private laterals subject to the provisions in subsections (a)-(c) above.

e.       Require any defects in the private lateral that causes the private lateral to fail the inspection be remedied prior to sale or as part of the Qualifying Remodel.  Defects causing a private lateral to fail the inspection shall include but not be limited to the following: pipe failure; open joints; and/or openings in the pipe, which allow root intrusion.

f.       Require the private lateral owner, within one hundred twenty (120) days of notification by the City, to remove roots from their laterals that are growing into Lower Laterals as determined by the City and make all necessary repairs to the private lateral necessary to prevent a reoccurrence of roots intrusion that reaches the lower lateral.

### XIV.   CHEMICAL ROOT CONTROL PROGRAM

47.       The City shall continue to implement and improve its chemical root control program to supplement hot spot and routine cleaning to assure compliance with the SSO Reduction Performance Standards in Section VII of this Consent Decree.

### XV.   ANNUAL REPORT

48.       By March 1 of each year that this Consent Decree remains in effect, the City shall submit an Annual Report to CSPA.  The Annual Report shall:

a.       Include the specific annual reporting requirements as set forth in Sections VII, VIII, X, XI, and XII of this Consent Decree.

b.       Provide details relevant to the City's implementation of, and compliance with, this Final Consent Decree during the preceding year, including any program modifications during the prior calendar year or delays.

PDF created with pdfFactory trial version www.pdffactory.com

1             c.     Assess the City's progress towards meeting the requirements of the Consent

2   Decree.

3   **XVI.   PAYMENT OF LITIGATION COSTS, MONITORING OF CONSENT DECREE**
4   **COMPLIANCE, AND MITIGATION PAYMENT**

5          49.   <u>Litigation Fees and Costs</u>. To help defray CSPA's attorneys, consultant, and expert

6   fees and costs, and any other costs incurred as a result of investigating, filing this action, and

7   negotiating a settlement, Defendant shall pay Plaintiff the sum of Two Hundred Fifty Thousand

8   Dollars ($250,000) which shall include all attorneys' fees and costs for all services performed by and

9   on behalf of CSPA by its attorneys and consultants up to and through the Effective Date of this

10  Consent Decree.  The payment shall be made within twenty-one (21) days of the Effective Date of

11  this Consent Decree.  The payment shall be made in the form of a check payable to "Lawyers for

12  Clean Water Attorney Client Trust Account" addressed to:  1004 O'Reilly Avenue, San Francisco,

13  CA 94129, sent overnight delivery, and shall constitute full payment for all costs of litigation

14  incurred by CSPA that have or could have been claimed in connection with or arising out of CSPA's

15  lawsuit, up to and including the Effective Date.

16         50.   <u>Compliance Monitoring</u>.  To compensate Plaintiff for time to be spent by legal staff or

17  technical consultants reviewing compliance reports and any other documents, or participating in any

18  meet and confer process under this Consent Decree.  To this end, the Defendant shall pay Fifteen

19  Thousand Dollars ($15,000) within twenty-one (21) days of the Effective Date of this Consent

20  Decree.  Payment shall be made payable to "Lawyers for Clean Water Attorney Client Trust

21  Account" addressed to 1004 O'Reilly Avenue, San Francisco, CA 94129, sent overnight delivery.

22         51.   <u>Mitigation Payment</u>.  To remediate perceived environmental harms resulting from the

23  allegations in the First Amended Complaint, Defendant shall pay to the Rose Foundation for

24  Communities and the Environment the total sum of Three Hundred Thousand Dollars ($300,000)

25  ("the Mitigation Payment") to be used to fund environmental project activities that will benefit the

26  Sacramento-San Joaquin River Delta and its watershed.  Payment shall be made within thirty (30)

27  days of the Effective Date of this Consent Decree, to:

28

PDF created with pdfFactory trial version www.pdffactory.com

The Rose Foundation for Communities and the Environment
6008 College Avenue, Suite 10
Oakland, California 94618
Attention: Tim Little

## XVII.  COMMITMENTS OF CSPA

52.   <u>Submission of Consent Decree to Federal Agencies</u>.  CSPA shall submit a copy of this Consent Decree to EPA and the United States Department of Justice ("DOJ") within three (3) days of its execution for agency review consistent with 40 C.F.R. § 135.5.  The agency review period expires forty-five (45) days after receipt by both agencies, as evidenced by the certified return receipts, copies of which shall be provided by CSPA to Defendant upon request.  In the event that EPA or DOJ comment negatively on the provisions of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by EPA or DOJ.

## XVIII. BREACH OF CONSENT DECREE AND DISPUTE RESOLUTION PROCEDURES

53.   <u>Force Majeure</u>.  Defendant shall notify CSPA pursuant to the terms of this paragraph, when implementation of the requirements set forth in this Consent Decree, within the deadlines set forth in those paragraphs, becomes impossible, despite the timely good-faith efforts of Defendant, due to circumstances beyond the control of Defendant or its agents, and which could not have been reasonably foreseen and prevented by the exercise of due diligence by Defendant.  Any delays due to Defendant's failure to make timely and bona fide applications and to exercise diligent efforts to comply with the terms in this Consent Decree in normal inclement weather shall not, in any event, be considered to be circumstances beyond Defendant's control.  Financial inability shall not, in any event, be considered to be circumstances beyond Defendant's control.

a.   If Defendant claims impossibility, it shall notify CSPA in writing within thirty (30) days of the date that Defendant first knew of the event or circumstance that caused or would cause a violation of this Consent Decree, or the date Defendant should have known of the event or circumstance by the exercise of due diligence.  The notice shall describe the reason for the nonperformance and specifically refer to this Section of this Consent Decree.  It shall describe the anticipated length of time the delay may persist, the cause or causes of the delay, the measures taken or to be taken by Defendant to prevent or minimize the delay, the schedule by which the measures will be implemented, and the anticipated date of compliance.  Defendant shall adopt all reasonable

PDF created with pdfFactory trial version www.pdffactory.com

1  measures to avoid and minimize such delays.

2          b.      The Settling Parties shall meet and confer in good-faith concerning the non-

3  performance and, where the Settling Parties concur that performance was or is impossible, despite the

4  timely good faith efforts of Defendant, due to circumstances beyond the control of Defendant that

5  could not have been reasonably foreseen and prevented by the exercise of due diligence by

6  Defendant, new performance deadlines shall be established.

7          c.      If CSPA disagrees with Defendant's notice, or in the event that the Settling

8  Parties cannot timely agree on the terms of new performance deadlines or requirements, either

9  Settling Party shall have the right to invoke the Dispute Resolution Procedures pursuant to Section

10  XVIII of this Consent Decree.  In such proceeding, Defendant shall bear the burden of proving that

11  any delay in performance of any requirement of this Consent Decree was caused or will be caused by

12  force majeure and the extent of any delay attributable to such circumstances.

13          54.     The Dispute Resolution Procedures set forth in Paragraphs 55 and 56 shall be the

14  exclusive mechanism for resolving disputes between the Settling Parties with regard to any aspect of

15  this Consent Decree.

16          55.     Informal Dispute Resolution.  The Settling Parties agree to engage in Informal Dispute

17  Resolution pursuant to the terms of this paragraph:

18          a.      If a dispute under this Consent Decree arises, or any Settling Party believes

19  that a breach of this Consent Decree has occurred, the Settling Parties shall meet and confer

20  (telephonically or in-person) within twenty-one (21) days of receiving written notification of a

21  request for such meeting.  During the meet and confer proceeding, the Settling Parties shall discuss

22  the dispute and make best efforts to devise a mutually acceptable plan, including implementation

23  dates, to resolve the dispute.  The Settling Parties may, upon mutual written agreement, extend the

24  time to conduct the meet and confer discussions beyond twenty-one (21) days.

25          b.      If any Settling Party fails to meet and confer within the timeframes set forth in

26  paragraph 55(a), or the meet and confer does not resolve the dispute, after at least twenty-one (21)

27  days have passed after the meet and confer occurred or should have occurred, either Settling Party

28  shall be entitled to initiate the Formal Dispute Resolution procedures outlined in Paragraph 56 below.

PDF created with pdfFactory trial version www.pdffactory.com

56.     <u>Formal Dispute Resolution</u>.  The Settling Parties agree that any action or proceeding which is brought by any Settling Party against any other Settling Party pertaining to, arising out of or related to the requirements of this Consent Decree shall first utilize the Informal Dispute Resolution meet and confer proceedings set forth in the preceding paragraph and, if not successful, the Settling Parties shall utilize the Formal Dispute Resolution procedures in this paragraph.  The Settling Parties agree that Formal Dispute Resolution shall be initiated by filing a Motion to Show Cause or other appropriately titled motion ("Motion") in the United States District Court, Eastern District of California, before the Honorable Judge Lawrence K. Karlton, or the District Court judge otherwise assigned to his matter at that time, to determine whether either party is in breach of this Consent Decree and, if so, to require the breaching party to remedy any breach identified by the District Court within a reasonable time frame.  The party filing any such Motion may request expedited review of the Motion.  If Judge Karlton is not available to perform the role identified herein, the Settling Parties agree that the Motion shall be re-assigned pursuant to applicable rules of the District Court. Litigation costs and fees incurred in the dispute resolution process shall be awarded in accord with the standard established by section 505 of the Clean Water Act, 33 U.S.C. § 1365.

## XIX.   STIPULATED PAYMENTS

57.     <u>Penalties for Failure to Submit Complete, Timely Reports</u>:  The City agrees to pay stipulated payments in the event complete reports covered by this Section are not timely submitted. Reports covered by this Section include the following Sections from this Consent Decree: the SSO Cause Determination SOP under Section VIII; the SSO Reduction Action Plan under Section IX; the FOG Control Action Plan under Section XI; and the Annual Reports under Section XV.  The City shall have a fourteen (14) day grace period after the due date for the reports covered by this Section prior to imposition of stipulated penalties for the first instance of delayed reporting.  CSPA is not obligated to notify the City, however it may do so in order to allow the City to promptly address any alleged deficiency after any submission date has been missed.

58.     The City shall pay the following stipulated payments in the event that they file a late or incomplete report covered herein after the grace period:

a.     For a report submitted after the grace period, the City shall pay $100 per day

PDF created with pdfFactory trial version www.pdffactory.com

1   until the report is filed, up to thirty (30) days for a total amount of $3,000.

2          b.     For any report more than thirty (30) days late, the City shall pay $5,000.

3          c.     For any report more than ninety (90) days late, the City shall pay $10,000.

4          d.     The above penalties are cumulative, as applicable, to a maximum penalty of
5   $18,000 per report.

6          59.    In the case of a late report, the City shall send CSPA the report per Section XX of this
7   Consent Decree.  CSPA shall notify the City of receipt of the late report and shall include an invoice
8   for the amount of the stipulated penalty, if any, due and payable.  The City shall contact CSPA within
9   five (5) working days if the City disagrees with CSPA's stipulated penalty calculation and may meet
10  and confer with CSPA or seek Dispute Resolution pursuant to Section XVIII of this Consent Decree.
11  The City shall pay any stipulated payments due pursuant to this Consent Decree within thirty (30)
12  days after receipt of CSPA's invoice itemizing the stipulated payment liability, or thirty (30) days
13  after resolution of a dispute if the dispute resolution process has been invoked pursuant to
14  Section XVIII of this Consent Decree.

15         60.    All payments of stipulated penalties described in this Consent Decree shall be paid by
16  the City to the Rose Foundation for Communities and the Environment and sent via overnight mail
17  to: Rose Foundation for Communities and the Environment, 6008 College Avenue, Oakland,
18  CA 94618, Attn: Tim Little.  Nothing in this Consent Decree shall prevent CSPA from waiving any
19  stipulated penalties, which might be due under this Section, based on the outcome of the Informal
20  Dispute Resolution process, or based on the City's good faith efforts.

21                      **XX.   NOTICES AND SUBMISSIONS**

22         61.    Defendant agrees to provide Plaintiff with all documents or reports required by this
23  Consent Decree.  All documents shall be directed to the following individuals at the addresses
24  specified below unless specifically stated otherwise herein.  Any change in the individuals or
25  addresses designated by any party must be made in writing to all Settling Parties.

26

27

28

PDF created with pdfFactory trial version www.pdffactory.com

1

<u>If to CSPA</u>:

2

Daniel Cooper
Drevet Hunt
3 LAWYERS FOR CLEAN WATER, INC.
1004 O'Reilly Avenue
4 San Francisco, California 94129
Telephone: (415) 440-6520
5 Email: daniel@lawyersforcleanwater.com
drev@lawyersforcleanwater.com
6

7

Michael Lozeau
8 Douglas Chermak (Bar No. 233382)
LOZEAU | DRURY LLP
9 1516 Oak Street, #216
Alameda, CA 94501
10 Telephone: (510) 749-9102
Email: michael@lozeaudrury.com
11 doug@lozeaudrury.com

12

California Sportfishing Protection Alliance
13 Bill Jennings, Executive Director
3536 Rainier Avenue
14 Stockton, California 95204
Telephone: 209-464-5067
15 Fax: 209-464-1028
Email: deltakeep@aol.com
16

17

<u>If to the City</u>:
18

Paul S. Simmons
19 Kanwarjit S. Dua
Somach Simmons & Dunn
20 813 Sixth Street, Third Floor
Sacramento, CA 95814
21 Telephone: (916) 446-7979
Fax: (916) 446-8199
22 Email: psimmons@somachlaw.com
Email: kdua@somachlaw.com
23

24

25

26

27

28

PDF created with pdfFactory trial version www.pdffactory.com

City of Stockton
Richard "Ren" E. Nosky, Jr., City Attorney
John Luebberke, Assistant City Attorney
425 N. El Dorado Street
Stockton, CA 95202-1997
Telephone: (209) 937-8009
Fax:    (209) 937-8898
Email: ren.nosky@ci.stockton.ca.us
          john.luebberke@ci.stockton.ca.us

Stockton Municipal Utilities
Mark J. Madison, Director
2500 Navy Drive
Stockton, CA 95206
Telephone: (209) 937-8700
Fax: (209) 937-8708
Email: mark.madison@ci.stockton.ca.us

62.    Defendant also agrees to make available to CSPA any existing documents within the City's custody or control that are reasonably necessary to evaluate system performance and/or compliance with this Consent Decree within thirty (30) days of written request by CSPA.

63.    During the life of this Consent Decree, Defendant shall preserve at least one legible copy of all records and documents, including computer-stored information, which relate to performance of its obligations under this Consent Decree.

64.    Any notice, report, certification, data presentation or other document submitted by Defendant to CSPA pursuant to this Consent Decree, which discusses, describes, demonstrates, or supports any finding or makes any representation concerning compliance or non-compliance with any requirement(s) of this Consent Decree, shall contain the following certification, signed and dated by a responsible official:

> I certify, under penalty of perjury, that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted and is, to the best of my knowledge and belief, true, accurate and complete.

## XXI.   MUTUAL RELEASE OF LIABILITY

65.    Upon District Court approval and entry of this Consent Decree, the Settling Parties and their successors, assigns, directors, officers, agents, attorneys, representatives, and employees, releases all persons, including the City and their respective officers, council members, employees,

PDF created with pdfFactory trial version www.pdffactory.com

agents, attorneys, representatives, contractors, predecessors, successors and assigns, past and present, from, and waives all claims, for injunctive relief, damages, penalties, fines, sanctions, mitigation, fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed in this action, including but not limited to the alleged failure of the City to comply with the 2002 Stockton WWTP Permit and the 2008 Stockton WWTP Permit, and for alleged violations of the Clean Water Act, Porter-Cologne Water Quality Control Act, the 2002 Stockton Stormwater Permit, 2007 Stockton Stormwater Permit, the SSO WDR, the San Joaquin County Ordinance, and City of Stockton Municipal Code as set forth in the Notice Letter, Supplemental Notice Letter, and/or First Amended Complaint up to the Termination Date of this Consent Decree, except as provided for in Sections XVIII and XIX of this Consent Decree.  This release includes a release, and covenant not to sue, for any claims of injunctive relief, damage, penalties, fines, sanctions, mitigation, fees (including fees of attorneys, experts and others), costs, expenses or any other sum incurred or claimed based on facts or allegations set forth in the Notice Letter, Supplemental Notice Letter, and/or First Amended Complaint up to the Termination Date of this Consent Decree, except as provided for in Sections XVIII and XIX of this Consent Decree.

66.     Nothing in this Consent Decree limits or otherwise affects CSPA's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before any judicial or administrative body on any other matter relating to Defendant, including expressly any administrative or judicial challenge to the Regional Board's decision to adopt the 2008 Stockton WWTP Permit.

## XXII.  GENERAL PROVISIONS

67.     <u>Continuing Jurisdiction</u>.  The Parties stipulate that the District Court shall retain jurisdiction to enforce the terms and conditions of this Consent Decree and to resolve disputes arising hereunder as may be necessary or appropriate for the construction or execution of this Consent Decree up to and including the Termination Date in paragraph 9.

68.     <u>Construction</u>.  The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in Section II above.

69.     <u>Choice of Law</u>.  The laws of the United States shall govern this Consent Decree.

PDF created with pdfFactory trial version www.pdffactory.com

70.     <u>Severability</u>.  In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a Court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

71.     <u>Counterparts</u>.  This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy, scanned copies (i.e., pdf) and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

72.     <u>Modification of the Consent Decree</u>.  This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Settling Parties.

73.     <u>Full Settlement</u>.  This Consent Decree constitutes a full and final settlement of this matter.

74.     <u>Integration Clause</u>.  This is an integrated Consent Decree.  This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Settling Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

///

///

///

///

///

///

///

///

///

///

///

PDF created with pdfFactory trial version www.pdffactory.com

1    75.    Authority.  The undersigned representatives for CSPA and the City each certify that

2  he/she is fully authorized by the Settling Party whom he/she represents to enter into the terms and

3  conditions of this Consent Decree.

4        The Settling Parties hereby enter into this Consent Decree.

5                                              CITY OF STOCKTON

6  Date: 8/3/09                               /s/J. Gordon Palmer, Jr.
7                                              By: J. GORDON PALMER, JR. City Manager

8                                              CALIFORNIA SPORTFISHING PROTECTION
9                                              ALLIANCE

10 Date: 7/31/09                              /s/Bill Jennings
                                               By: BILL JENNINGS
11

12 APPROVED AS TO FORM:                       For DEFENDANT CITY OF STOCKTON:

13                                             SOMACH SIMMONS & DUNN, PC

14 Date: 8/4/09                               /s/Kanwarjit S. Dua
15                                             By: KANWARJIT S. DUA

16                                             RICHARD E. NOSKY, JR.
                                               CITY ATTORNEY
17

18 Date: 8/3/09                               /s/John M. Luebberke
                                               By: JOHN M. LUEBBERKE
19                                                 Assistant City Attorney

20                                             For PLAINTIFF CALIFORNIA SPORTFISHING
21                                             PROTECTION ALLIANCE:

22                                             LAWYERS FOR CLEAN WATER INC.

23 Date: 8/4/09                               /s/Daniel Cooper
                                               By: DANIEL COOPER
24

25

26

27

28

PDF created with pdfFactory trial version www.pdffactory.com

1

## <u>ORDER</u>

2    IT IS HEREBY ORDERED that the above captioned action against all parties is dismissed

3    with prejudice.

4    IT IS FURTHER ORDERED that, through the Termination Date specified in paragraph 10 of

5    the Consent Decree, the Court shall retain jurisdiction over CSPA's claims against Defendant for the

6    sole purpose of enforcing compliance by the Settling Parties with the terms of the Consent Decree;

7    IT IS SO ORDERED.

8    Date:  September 30, 2009

9

10

11    LAWRENCE K. KARLTON
      SENIOR JUDGE
12    UNITED STATES DISTRICT COURT

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PDF created with pdfFactory trial version www.pdffactory.com